UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

DAMICHEL JESUS VIAMONTES CASTELLANO, Petitioner,

v. Civil Action No. 3:26-cv-729-RGJ

JEFF TINDALL, et al., Respondents.

* * * * *

**MEMORANDUM OPINION & ORDER**

This matter comes before the court on the Petition for writ of habeas corpus filed by Petitioner Damichel Jesus Viamontes Castellano ("Castellano"). [DE 1]. The United States as counsel for the Federal Respondents ("Respondents") responded [DE 8], and Castellano replied [DE 11]. Castellano also moves to expedite. [DE 13]. This matter is ripe. For the reasons below, the Petition [DE 1] and motion to expedite [DE 13] are **GRANTED**.

## I. BACKGROUND

Castellano is a native and citizen of Cuba. [DE 1 at 1]. Castellano was arrested by Texas border patrol agents in 2022, placed in standard removal proceedings, issued a Form I-862 Notice to Appear ("NTA"), and released on his own recognizance. [DE 8-1 at 52].

In May 2026, Immigration and Custom Enforcement ("ICE") officers "determined that [Castellano] had been issued an NTA by border patrol on 02/07/2022 and had been charged with DUI and Reckless Driving on 02/22/2025." [DE 8-2 at 55]. Based on this information, ICE determined to conduct a targeted operation to arrest Castellano. [*Id.*]. On May 19, 2026, ICE arrested Castellano and cancelled his order of release on recognizance from 2022. [DE 8-2 at 56; DE 8-4]. Castellano was taken into custody and "issued forms I-862, I-200, and I-826." [DE 8-2 at 56; DE 8-3; DE 8-5]. He was not issued a Form I-286.

Castellano has been detained at the Oldham County Detention Center in La Grange, Kentucky, since May 19, 2026. [DE 1 at 1]. On July 28, 2026, the IJ ordered Castellano removed to Cuba. [DE 8-6]. Castellano timely appealed, and his appeal is pending with the Board of Immigration Appeals ("BIA"). Because his appeal of the order of removal remains pending, the order is not "administratively final" for purposes of the INA. *See* 8 U.S.C. §§ 1101(a)(47)(B), 1231(a)(1)(B)(i), 1231(a)(2)(A).[1] The parties agree that Castellano is detained under § 1226(a). [DE 8 at 45; DE 1 at 4].

Castellano is the father of a United States citizen, who was born in Louisville, KY, in 2024. [DE 11 at 75]. His mother is a "Lawful Permanent Resident who filed an approved Form I-130 relative petition on his behalf." [*Id.*]. Castellano is also the "the sole organizer and registered agent of MICHAEL DRYWALL METAL FRAMER LLC, an active Kentucky business," and has "has fully complied with state court directions and successfully completed state-certified DUI alcohol education and counseling programs" arising from his DUI charges, although he was never convicted. [*Id.*].

## II. DISCUSSION

### A. Section 1226(a)

Section 1226(a) "sets out the general rule" for "the arrest, detention, and release" of "aliens present in the country" "who are believed to be subject to removal." *Nielsen v. Preap*, 586 U.S. 392, 396 (2019). Under Section 1226(a) and its implementing regulations, a DHS officer generally takes a noncitizen into custody "under the authority of Form I–200, Warrant of Arrest" issued by certain designated supervisory officers. 8 C.F.R. § 236.1(b). The Government "may" detain such

[1] Accordingly, it is undisputed that Castellano is subject to § 1226(a) rather than § 1231. *See* 8 U.S.C. § 1231(a)(2)(A) (following admiratively final removal order, "[d]uring the removal period, the Attorney General shall detain the alien.").

individuals "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a).

Section 1226(a) and its implementing regulations create extensive procedural protections which are grounded in due process principles. The Supreme Court has recognized that due process requires that immigration detention bear a "'reasonable relation'" to a non-punitive purpose. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)). There are two permissible non-punitive purposes for detention under the immigration laws: ensuring a noncitizen's appearance at removal proceedings or removal and preventing danger to the community. *Id.* at 690–92. Due process requires the Government to exercise the discretion afforded by § 1226(a) and determine, on an individualized basis, whether to detain or release a noncitizen under the statute. Otherwise, a noncitizen subject to § 1226(a) would be effectively subject to mandatory detention, in direct contravention of Congress's determination that detention under § 1226(a) is not required. There would also be an unacceptably high risk that that the noncitizen's confinement is not "reasonably related" to a legitimate purpose. *Zadvydas*, 533 U.S. at 690. Thus, the regulations provide that DHS officers will conduct an initial custody determination to decide whether to release or detain the person under Section 1226. 8 C.F.R. § 236.1(c)(8). The DHS officer must release the noncitizen if the noncitizen "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8).

Likewise, after the initial determination is made to detain the noncitizen pursuant to § 1226(a), due process requires the government to provide notice and an opportunity for the noncitizen to request a request a custody determination hearing. To that end, the regulations contemplate that DHS will utilize a Notice of Initial Custody Determination, Form I-286, to

document its custody determinations. 8 C.F.R. § 236.1(g). This Form I-286 is especially important because it includes "the formal mechanism—a box the detainee may check—to immediately request" that an Immigration Judge ("IJ") review DHS's custody determination at a custody redetermination hearing (i.e., a bond hearing). *Garcia-Maya v. Blanche*, No. 2:26-cv-01513-RFB-BNW, 2026 WL 1965886, at *8 (D. Nev. July 7, 2026). If the noncitizen checks this box, or otherwise requests a custody redetermination hearing, an IJ will set a hearing in Immigration Court. *See* 8 C.F.R. §§ 1236.1(d)(1), 1003.19. *See also Sanchez Marquez v. Warden, Desert View Facility*, No. 5:26-CV-05368-MBK, 2026 WL 2948874, at *5 (C.D. Cal. Oct. 1, 2026) ("Absent an initial custody review, a noncitizen may not be aware that they are eligible for a bond hearing or know how to request one.").

These procedures are necessary to satisfy the "most basic requirements of due process," namely, notice and an opportunity to be heard. *See Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 635 (6th Cir. 2005). Indeed, in the context of immigration removal proceedings, the Sixth Circuit has recognized that "it is 'well established' that the Fifth Amendment 'entitles' non-citizens to due process. . . . This includes the constitutional requirements of 'fair notice' and 'even-handed administration of the law.'" *Shuti v. Lynch*, 828 F.3d 440, 445 (6th Cir. 2016). There is no reason that these fundamental requirements should not apply equally to the government's decision to impose detention pending removal pursuant to § 1226(a). After all, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690.

**B. Prudential Exhaustion**

As a basis for habeas relief, Castellano argues that his "ongoing, multi-month detention during the pendency of his BIA appeal—without an individualized bond hearing before an

Immigration Judge where the government bears the burden of proof by clear and convincing evidence—deprives him of fundamental liberty without due process of law." [DE 1 at 2]. Although the parties agree Section 1226(a) governs Castellano's detention, and that Castellano is entitled to a custody redetermination hearing, Respondents assert that "[u]nder the controlling regulations, 8 C.F.R. § 1003.19(b) and § 1003.19(e), aliens (or their representatives) initiate custody redetermination hearings (bond hearings) in the Immigration Court, not DHS attorneys." [DE 8 at 45]. According to Respondents, "[Castellano] merely needs to file a motion for custody redetermination and a bond hearing will be provided." [*Id.* at 47]. Respondents urge the Court to apply the doctrine of prudential exhaustion and dismiss Castellano's Petition because he has not exhausted his administrative remedies.

In reply, Castellano argues that the Court should not require administrative exhaustion for several reasons. First,

> [e]ven under Respondents' regulatory framework, ICE violated its own mandatory procedures at arrest. Under 8 C.F.R. § 236.1(g)(1), when DHS takes a noncitizen into custody pursuant to 8 U.S.C. § 1226(a), an authorized officer must render an initial custody determination and serve a written Notice of Custody Determination (Form I-286) setting bond or conditions of release.

[DE 11 at 73]. Castellano concludes that " ICE cannot disregard its regulatory duties at inception, create an unlawful detention status post-*Lopez-Campos*, and then demand that an incarcerated noncitizen cure the government's agency error through EOIR administrative channels." [*Id.*].

Second, were Castellano required to first request a bond hearing from an IJ, the hearing would be insufficient because "Board of Immigration Appeals (BIA) precedent governing § 1226(a) administrative hearings places the burden strictly on the noncitizen to establish that he is not a danger or flight risk." [*Id.* (citing *Matter of R-A-V-P-*, 27 I. & N. Dec. 803, 804 (BIA 2020))].

Third, Castellano argues that ordering a custody redetermination hearing would be inadequate to cure the ongoing remedy of unlawful detention. [*Id.* at 74]. Castellano has already been detained for "over 120 days without any neutral judicial review of his detention," and any further administrative delays, including appeal to the BIA, would cause "continuous, irreparable constitutional injury." [*Id.*].

Finally, Castellano contends that there is no evidence that his confinement is "reasonably related" to either of the legitimate purposes identified in *Zadvydas*. 533 U.S. at 690. He "presents no flight risk or danger to public safety that cannot be addressed through standard conditions of supervision." [DE 13 at 75].

Having considered the parties' arguments and the relevant law, the Court declines to require administrative exhaustion. Respondents' argument that "[t]he Court should not create a remedy in habeas when one is available under the relevant statutes and regulations" is well taken, to a point. [DE 8 at 47]. If, as Respondents claim, Castellano had merely "failed to avail himself of that relief, despite it being available to him," [*id.*], the Court would be inclined to require the Petitioner to pursue administrative relief before initiating an action in habeas.

But here, the record shows that Respondents failed to follow the required processes both for making an *initial* custody determination and in providing Castellano notice of his custody determination and opportunity to challenge that determination before an IJ. There is no evidence that when Castellano was detained by ICE officers any individualized assessment was made as to whether his "release would not pose a danger to property or persons, and [whether he] is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). The Form I-213 submitted by Respondents merely indicates that Castellano was "was processed as a Back in Custody and issued

forms I-862, I-200, and I-826" and that he "will be held at the Oldham County Detention Center in La Grange, Kentucky." [DE 8-2 at 56].

In light of the critical importance of the procedures available under § 1226(a) at the outset of an individual's detention, numerous district courts in the Second and Ninth Circuits have recognized that "section 1226(a) requires an individualized custody determination before detention and failure to do so is 'in itself [ ] a violation of [petitioner's] due process rights.'" *Lopez Esteban v. Warden-Facility Adm'r of Nw. Processing Ctr.*, No. 2:26-cv-02548-JHC, 2026 WL 2686824, at *4 (W.D. Wash. Sept. 14, 2026) (quoting *Pastrana-Beltran v. Mullin*, 2026 WL 1398609, at *2 (E.D.N.Y. May 19, 2026) and collecting cases). *See also Sanchez*, 2026 WL 2948874, at *5 (collecting cases). In the absence of an initial custody determination, which establishes a lawful basis for detention in the first instance, a subsequent bond hearing "is no substitute for the requirement that ICE engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip" Petitioner of his freedom. *Lopez Benitez v. Francis,* 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025) (citation modified).

Moreover, Respondents have not provided Castellano's Form I-286, Notice of Initial Custody Determination, despite the Court's order requesting it. [DE 6 at 38 (requesting "Form I-286 Notice of Custody Determination"); *see also id.* at 39 ("(7) What forms, if any, did CBP, DHS, or ICE provide to Petitioner, and when and how were those forms served? (8) Were the forms provided, or read, in Petitioner's native language?")].[2] Accordingly, the Court finds that a Form I-286 does not exist as to Castellano, and that Respondents have failed to comply with their statutory, regulatory, and constitutional obligations under 8 U.S.C. § 1226(a), 8 C.F.R. § 236.1, and the Due

[2] The Court's order requests this information "as applicable." [DE 6 at 39]. For the reasons discussed herein, whether Castellano was served an I-286 or otherwise provided notice of his custody determination and right to a bond hearing are clearly applicable to Respondents' prudential exhaustion argument.

Process Clause of the Fifth Amendment. *See infra*, Section II.C (discussing procedural due process requirements).

Finally, none of the ordinary considerations which militate in favor of prudential exhaustion apply to Castellano. Respondents ask the Court to follow other courts in the Sixth Circuit in applying the Ninth Circuit's test for prudential exhaustion. *See, e.g., Torrealba v. U.S. Dept. of Homeland Sec.*, 2025 WL 2444114, at *8-10, n.16 (N.D. Ohio Aug. 25, 2025). Under that test, administrative exhaustion should be required when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Torrealba*, 2025 WL 2444114 at *9 (quoting *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007).

Starting with the first factor, courts applying the Ninth Circuit's test have explained that "agency expertise is not necessary to generate a proper record or reach a proper decision," when, as here, "[i]t is undisputed by the parties before the Court that petitioner is entitled to a bond hearing pursuant to 8 U.S.C. § 1226(a)." *Hernandez Burruel v. Murray*, No. 1:25-cv-01569-DAD-AC, 2025 WL 3240356, at *3 (E.D. Cal. Nov. 20, 2025) ("Whether this court or an immigration court directs that one be provided to petitioner is immaterial.").

As to the second factor, for the reasons discussed above, the "administrative scheme" has already been bypassed. It would be unjust and absurd to require Castellano to exhaust an administrative process that Respondents themselves failed to follow. A custody redetermination hearing without pre-deprivation process flouts the regulatory scheme that empowers IJs to hear "*[a]ppeals* from custody decisions" "*[a]fter* an initial custody determination." 8 C.F.R. § 236.1(d) (emphasis added); *Angeles-Pena v. Blanche*, No. 2:26-CV-02154-RFB-EJY, 2026 WL 2280939,

at *10 (D. Nev. Aug. 7, 2026). And to the extent that Respondents maintain that Castellano is eligible for a bond hearing, it is unknown why Respondents have not facilitated such a hearing in light of Castellano initiating this action on September 15, 2026 [DE 1]—the initiation of such action being a clear indication of a request for bond hearing.

Lastly, it is not clear that administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review. Respondents concede that an IJ will be bound by BIA precent, which puts the burden of proof on the noncitizen to "establish to the satisfaction of the Immigration Judge and the Board that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight.'" *Matter of R-A-V-P-*, 27 I. & N. Dec. 803, 804 (BIA 2020). [*See also* DE 8 at 46]. Castellano argues that requiring him to first seek review from the IJ would be "inadequate because the agency applies an unconstitutional standard that shifts the burden of proof onto the detainee." [DE 11 at 71]. Although this Court has not yet addressed what burden of proof applies to custody redetermination hearings pursuant to § 1226(a), it does now.

Section 1226(a) "is silent as to what burden of proof applies in bond hearings and who bears that burden." *Soto-Medina v. Lynch*, 817 F. Supp. 3d 612, 621 (W.D. Mich. 2026) (citing *Hernandez-Lara v. Lyons*, 10 F.4th 19, 26 (1st Cir. 2021)). The Supreme Court held that § 1226(a) does not mandate that a clear and convincing evidence burden be placed on the government in bond hearings but left open the question of whether the Due Process Clause so requires. *Id.* at 622 (citing *Jennings v. Rodriguez*, 583 U.S. 281 (2018)). Although the BIA "found it reasonable to apply the standard [under 8 C.F.R. § 236.1(c)(8)] to § 1226(a) bond hearings," "placing the burden on the alien to show to the satisfaction of the Immigration Judge that he or she merits release on bond," *id.* at 621, courts are not bound by and are not required to give deference to an agency's

interpretation of a statute. *See Loper Bright Enter. v. Raimondo*, 603 U.S. 369, 413 (2024) (noting that "Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority.").

Absent guidance from the Sixth Circuit, courts have found that the government bears the burden to establish by clear and convincing evidence that the noncitizen presents a flight risk or danger to the community. *See, e.g., Soto-Medina* at 622; *Ba v. Raycraft*, No. 26-10838, 2026 WL 1213803, at *4 (E.D. Mich. May 4, 2026); *Campos-Rios v. Blanche*, No. 3:26-CV-00640, 2026 WL 1361650, at *16 (N.D. Ohio May 15, 2026); *Singh v. Hott*, No. 4:26-CV-256-DJH, 2026 WL 1880217, at *5 (W.D. Ky. June 30, 2026). Likewise, the First and Second Circuits place the burden of proof as to dangerousness on the government. *Alsyouf v. Bullock*, No. 2:26-CV-02762-SHL-CGC, 2026 WL 2088111, at *2 (W.D. Tenn. July 20, 2026) (but noting the Fourth and Ninth Circuits have reached the opposite conclusion).

Relying on *Miranda v. Garland,* Respondents argue that the burden is properly placed on non-citizens because they have more information about their criminal and immigration history, as well as other mitigating factors. 34 F.4th 338, 362 (4th Cir. 2022) ("[A]liens should know as much or more than the government about their own criminal history, and they should know more than the government about any mitigating evidence related to that history."). [DE 8 at 46 n.2].

The Court is unconvinced that noncitizens hold such an advantage over Respondents. To the contrary, the First Circuit notes that "noncitizens have no right to be provided with counsel," "detained individuals will likely experience difficulty in gathering evidence on their own behalf," "noncitizens subject to immigration detention often lack full proficiency in English," and "immigration law and procedures and the particular preferences of individual IJs are likely much better known to government representatives than to detainees." *Hernandez-Lara*, 10 F.4th at 30–

31. In sum, a noncitizen "often starts out behind the eight ball in a bond proceeding, and the opportunities for prejudicial error abound." *Id.*

Nor does it appear that Respondents' concerns are applicable in this case. Castellano has been present in the United States since 2022, after ICE released him on his own recognizance. [DE 8-1]. Apparently reconsidering its prior determination that Castellano posed no danger to the community and was not a flight risk, ICE "opened a targeted enforcement investigation" against Castellano and ultimately re-detained him. [DE 8-2 at 55]. The burden on the government to articulate the reasons for this detention decision therefore appears minimal.

As a result, this Court joins those courts which have concluded that due process requires the government to bear the burden of proof by clear and convincing evidence in § 1226(a) bond hearings. Indeed, as the Second Circuit held in in *Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020), "shifting the burden of proof to the Government to justify continued detention promotes the Government's interest—one we believe to be paramount—in minimizing the enormous impact of incarceration in cases where it serves no purpose." 978 F.3d at 854.

Accordingly, the third factor identified by the Ninth Circuit in *Puga v. Chertoff* also weighs against applying the doctrine of prudential exhaustion. 488 F.3d at 815. The Court will therefore reach the merits of Castellano's due process claims.[3]

**C. Due Process**

As discussed, Castellano is entitled to individualized bond hearing (in which the government bears the burden of proof by clear and convincing evidence). However, he has not received one. This Court has repeatedly held that detention of noncitizens without a custody re-

[3] Because the Court concludes that Castellano's detention violates due process, the Court need not reach Castellano's arguments pursuant to *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267 (1954). [DE 11 at 73].

determination hearing under § 1226(a) violates the Due Process Clause of the Fifth Amendment and makes their continued detention unlawful. *See, e.g., Reyna Mercedes Alcerro-Flores v. Jason Woosley, et al.*, No. 4:26-CV-510-RGJ, 2026 WL 3206929, at *5 (W.D. Ky. Oct. 26, 2026) (quoting *Lopez-Campos v. Raycraft*, 175 F.4th 713, 734 (6th Cir. 2026)).

Additionally, the Court finds Castellano did not receive adequate notice of ICE's initial custody determination. Courts apply the three-part balancing test in *Mathews v. Eldridge*, 424 U.S. 893 (1976) to determine what procedures are mandated by the Due Process clause of the Fifth Amendment. The *Mathews* factors include (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

Applying the *Mathews* factors here is straightforward: (1) Castellano has a strong private liberty interest in being free from detention; (2) there is a high risk of erroneous deprivation because ICE failed to make an initial individualized custody determination pursuant to 8 C.F.R. § 236.1(c)(8) and to provide Castellano notice of his custody determination and opportunity to challenge that determination before an IJ; and (3) the government has little or no legitimate interest in detaining Castellano without first determining whether such detention would further the purpose of ensuring his appearance at future proceedings or preventing danger to the community, *Zadvydas*, 533 U.S. at 690–92; likewise, the government's interest in withholding a Form I-286 (or another adequate form of notice of ICE's custody determination and opportunity to request a custody redetermination hearing) serves no legitimate purpose and is minimally burdensome. In fact, given the "substantial social and financial costs" resulting from needless executive detention, the public interest against providing such basic notice—notice which is already prescribed by

regulation—is "uncertain at best, and may well be negative." *Hernandez-Lara*, 10 F.4th at 33 ("[N]oncitizens subject to immigration detention include spouses, children, and parents of U.S. citizens, caretakers of children and elderly relatives, and leaders in religious, cultural, and social groups. The needless detention of those individuals thus 'separates families and removes from the community breadwinners, caregivers, parents, siblings and employees.'").

**D. Remedy**

The proper remedy for unlawful executive detention is generally release. *See Orellana v. Noem*, 807 F. Supp. 3d 745, 754 (W.D. Ky. 2025) ("[C]ourts across the country have ordered the release of individuals stemming from ICE's illegal detention."). That is especially true where, as here, Respondents have articulated no legitimate interest in detaining Castellano. *Alcerro-Flores,* 2026 WL 3206929, at *5 (ordering release and requiring bond hearing prior to the petitioner's re-detention). [*See also supra* (discussing ICE's decision to release Castellano on his own recognizance); DE 11 at 75].

Accordingly, the Court will order Castellano's release. Should Respondents re-detain Castellano, absent a material change in circumstances, they must provide Castellano with a bond hearing pursuant to Section 1226(a), in which the government will bear the burden of proof by clear and convincing evidence.

## III. CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Petition for Writ of Habeas Corpus [DE 1] and motion to expedite [DE 13] and **ORDERS** the following:

(1) Respondents are directed to release Castellano immediately because of the unlawful detention in violation of his due process rights; and

(2) the United States must certify compliance with the Court's order by a filing on the docket by **November 12, 2026**.

Rebecca Grady Jennings, District Judge
United States District Court

November 10, 2026

Cc: Counsel of record